

FILED
AUG 13 2010

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
### CENTRAL DIVISION

| | |
|---|---|
| MARK LILLIBRIDGE,<br><br>Plaintiff,<br><br>vs.<br><br>NAUTILUS INSURANCE COMPANY,<br><br>Defendant. | Civ. 10-4105<br><br><br><br>**COMPLAINT** |

The Plaintiff, by and through his counsel, Cutler & Donahoe, LLP, for his causes of action against the above-named Defendant, states and alleges as follows:

### PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff Mark Lillibridge ("Lillibridge") was a resident of Gregory County, South Dakota.

2. Upon information and belief, at all times relevant hereto, Defendant Nautilus Insurance Company ("Nautilus") was a corporation organized and existing under the laws of the state of Arizona and which sold surplus lines of insurance in the state of South Dakota.

3. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

4. The amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs.

### FACTS

5. In 2006, Lillibridge planned to construct a home for himself in Burke, Gregory County, South Dakota (the "Property").

6. On or about September 28, 2006, Lillibridge entered into a contract with Nautilus for provision of Commercial Property Coverage under a Builder's Risk Policy (the "Policy").

7. The Policy was drafted by Nautilus.

8. The Policy provided for up to $300,000.00 in coverage for losses suffered during construction of the Property.

9. On or about April 21, 2007, an unexpected hail storm with large hailstones struck the city of Burke and the Property, causing severe damage to the roof of the Property, which was under construction.

10. The roof on the Property had been constructed out of six-inch insulated steel panels with an R-50 insulation value, a much more expensive roofing material than a traditional shingle roof.

11. Shortly after the hail storm, Lillibridge contacted Nautilus to make a claim under the Policy.

12. In section E.6 of the Builders Risk Coverage Form of the Policy, Nautilus assigned unto itself the duty of determining the value of a loss in the event a claim is submitted, which provides, "We will determine the value of Covered Property at actual cash value as of the time of loss or damage."

13. Upon information and belief, Nautilus contracted with Clinton Herman ("Herman") of Dakota Claims Service of Chamberlain to perform claims adjusting duties as Nautilus' agent.

14. Herman visited the Property shortly after a claim was made, but was unfamiliar with the specific type of roofing used on the Property.

15. Upon information and belief, Herman recommended that Nautilus pay $35,101.99 as the replacement cost for the roof on the Property, a figure that was not based on the type of roof on the Property and which grossly underestimated the actual cost to replace the roof.

16. Lillibridge informed Herman that $35,101.99 would not be sufficient to replace the roof. Herman told Lillibridge that he, Lillibridge, could submit a bid for the replacement cost. Herman further represented that Nautilus would pay in a prompt manner what was necessary to make up the difference between the $35,101.99 payment and the bid price.

17. Nautilus paid the $35,101.99 to Lillibridge.

18. On or about December 21, 2007, Lillibridge obtained a bid from H & R Roofing and provided it to Herman. The estimate placed the cost of replacement of the roof at $342,564.00.

19. Over the next several months, Lillibridge contacted Herman on a number of occasions for updates on the status of his claim. Herman told Lillibridge he had submitted the bid to Nautilus but that Nautilus had not responded to his phone calls or e-mails.

20. On July 10, 2008, Jody Young, the insurance agent who sold Lillibridge the Policy, contacted Nautilus in an attempt to get Nautilus to process Lillibridge's claim. A representative from Nautilus responded, stating the claim had been closed after the $35,101.99 payment and denying ever receiving the bid Lillibridge provided to Herman.

21. Due to the significant passage of time, Lillibridge obtained an updated bid on August 7, 2008, for replacing the roof. The new bid was $460,340.00. Lillibridge provided this bid to Nautilus.

22. On August 19, 2008, counsel for Lillibridge sent a letter to Nautilus recounting the significant delays in processing Lillibridge's claim and the increased cost of roof replacement as a result of the delay and requesting resolution of the claim by September 7, 2008.

23. On August 25, 2008, Nautilus responded to Lillibridge's counsel and claimed the bids provided were not sufficient. However, Nautilus said the claim was a priority issue and indicated the company would respond in two weeks.

24. On October 7, 2008, counsel for Lillibridge again wrote Nautilus as there had been no contact from Nautilus in nearly seven weeks. This letter again expressed concern with Nautilus' delay in processing the claim.

25. On October 20, 2008, counsel for Lillibridge again wrote to Nautilus to provide a more detailed bid and to determine if Nautilus disagreed with Lillibridge's position on resolving the claim.

26. Nautilus did not respond to Lillibridge's counsel until November 5, 2008, and then only indicated Nautilus was waiting for more bid documents.

27. On November 6, 2008, counsel for Lillibridge wrote to Nautilus about Lillibridge's concern regarding the delay in processing the claim and the need to resolve the claim in a timely manner.

28. Nautilus finally made an additional payment to Lillibridge in the amount of $234,898.01 on or about December 29, 2008, for a total payout of $270,000.00, $30,000.00 less than the limits available under the Policy.

29. Nautilus refused to pay any further sums under the Policy to help cover the cost of replacing the roof on the Property.

30. Section D.2 of the Commercial Property Conditions form of the Policy provides that legal action against Nautilus must be "brought within two years after the date on which the direct physical loss or damage occurred."

31.     Section D.2 of the Commercial Property Conditions form of the Policy is void under the provisions of SDCL 53-9-6 and 15-2-13, and this suit is timely commenced.

## COUNT I
## (BREACH OF CONTRACT)

32.     Lillibridge realleges the preceding paragraphs as if set forth fully herein.

33.     Lillibridge is entitled to payment for the damages sustained to the Property as a result of the hail storm, up to the $300,000 limits of the Policy, based upon the estimates provided to Nautilus.

34.     Lillibridge has demanded the policy limit, which demand has been refused by Nautilus.

35.     Nautilus' failure and refusal to resolve Lillibridge's claim within the limits of the coverage available under the Policy constitutes a breach of contract.

36.     As a result of Nautilus' breach of contract, Lillibridge is entitled to compensatory damages of $30,000, which sum represents the difference between the policy limits and the amounts paid by Nautilus.

## COUNT II
## (BAD FAITH)

37.     Lillibridge realleges the preceding paragraphs as if set forth fully herein.

38.     The Policy was a valid contract for insurance between Lillibridge and Nautilus.

39.     The damage to the roof of the Property was compensable under the terms of the Policy.

40.     Nautilus consciously engaged in wrongdoing by delaying the investigation, processing and payment of the claim.

41. Nautilus' delay in investigating, processing and paying the claim was unreasonable and Nautilus knew it was unreasonable or was reckless in its disregard of the existence of a reasonable basis to investigate, process and pay the claim in a timely manner.

42. Nautilus' conduct constitutes a violation of its duty of good faith and fair dealing to its insured, which breach constitutes an independent cause of action sounding in tort.

43. Had Nautilus investigated, processed and paid this claim in a timely manner, Lillibridge would have incurred only $42,564.00 in uncovered expenses to replace the roof. This sum represents the difference between the initial bid of $342,564.00 and the $300,000.00 policy limit.

44. As a result of Nautilus' delay in investigating, processing and paying the claim, Lillibridge will now incur over $160,340.00 in uncovered expenses to replace the roof. This sum represents the difference between the second bid of $460,340.00 and the $300,000.00 policy limit.

45. As a result of Nautilus' bad faith, Lillibridge is entitled to damages in excess of $117,776.00.

## COUNT III
### (VEXATIOUS REFUSAL TO PAY)

46. Lillibridge realleges the preceding paragraphs as if set forth fully herein.

47. Nautilus' conduct in failing to properly investigate, process and pay Lillibridge's claim for benefits under the Policy as set forth above is vexatious or without reasonable cause, entitling Lillibridge to an award of reasonable attorney fees pursuant to SDCL 58-12-3.

## COUNT IV
### (PUNITIVE DAMAGES)

48. Lillibridge realleges the preceding paragraphs as if set forth fully herein.

49. Nautilus' conduct in failing to properly investigate, process and pay Lillibridge's claim for benefits under the Policy as set forth above is willful, wanton, oppressive and malicious, entitling Lillibridge to an award of punitive damages against Nautilus pursuant to SDCL 21-3-2.

WHEREFORE, Lillibridge requests a judgment against Nautilus as follows:

1. For Lillibridge's compensatory and general damages;

2. For Lillibridge's special damages;

3. For punitive damages;

4. For attorney's fees, costs and disbursements herein;

5. For interest as provided by law; and

6. For any other and further relief which the Court determines is just and proper.

### JURY TRIAL DEMANDED

Dated this 13th day of August, 2010.

CUTLER & DONAHOE, LLP
Attorneys at Law

_____
Michael D. Bornitz
William D. Sims
PO Box 1400
Sioux Falls, SD  57101-1400
Telephone:  (605) 335-4950
Facsimile:  (605) 335-4966
MikeB@cutlerlawfirm.com
BillS@cutlerlawfirm.com
Attorneys for Plaintiff