UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK LILLIBRIDGE, | ) | CIV. 10-4105-KES |
| Plaintiff, | ) | |
| vs. | ) | |
| NAUTILUS INSURANCE COMPANY, | ) | MEMORANDUM OPINION AND ORDER |
| Defendant and Third-Party Plaintiff, | ) | |
| vs. | ) | |
| DAC's II, INC., d/b/a Dakota Claims Service of Chamberlain, | ) | |
| Third-Party Defendant. | ) | |

Plaintiff, Mark Lillibridge, moves for partial summary judgment on the third affirmative defense raised by defendant, Nautilus Insurance Company, in its answer based on the two-year limitations provision contained within Lillibridge's insurance policy. Docket 68. Lillibridge asserts that this defense is void under South Dakota public policy and judgment should be issued in his favor. Nautilus resists that motion and claims that the court should allow it to amend its answer and voluntarily strike that defense. Dockets 82 and 84. Lillibridge resists the motion to amend and argues that he would be prejudiced if the court grants the motion. Lillibridge also moves to present the issue of punitive damages to the jury and to conduct discovery on that topic. Docket 68. Nautilus resists that motion, claiming Lillibridge cannot carry his heightened burden of establishing malice for

punitive damages and any malicious behavior in this case is attributable to an agent of third-party defendant, DAC's II, Inc., d/b/a Dakota Claims Service of Chamberlain (DAC's II). Docket 73.

## BACKGROUND

Lillibridge owns a house in Burke, South Dakota. Since 2003 or earlier, Lillibridge has been in the process of remodeling or adding on to his home, including replacing the roof of the entire structure. Prior to beginning construction on the house, Lillibridge purchased a builder's risk policy from Nautilus that provided commercial property coverage. Nautilus is an insurance company organized under the laws of the state of Arizona and authorized to do business in South Dakota.

In 2003, Lillibridge purchased a roofing product called structural insulated steel panels (SISP), which is a strong roofing panel with high insulating value. At the time of his purchase, Lillibridge bought enough panels to complete the entire roofing project on his home in Burke. The use of these panels in a residence is unusual because the panels are predominantly used in commercial settings. Lillibridge worked outside of the country for long periods of time, so he worked on the roofing project of his home in stages.

On April 21, 2007, a severe hail storm struck the city of Burke. At the time of the storm, Lillibridge's roof was only partially completed. The parties disagree about the square footage of SISP panels that were actually installed at the time of

2

the storm, but it is undisputed that SISP panels installed on the roof sustained damage as well as a number of panels that were located on a pallet near the structure. Lillibridge was out of the country when the storm hit Burke. As a result, he did not submit a property damage claim under his policy with Nautilus until after he returned to South Dakota in late May.

On May 23, 2007, Lillibridge notified Nautilus that he had sustained a loss and wanted to invoke coverage under his policy. That same day, Nautilus claims examiner Cara Daugherty sent the claim assignment form to independent claims adjuster Clinton Herman of Dakota Claims Service of Chamberlain. Nautilus used Dakota Claims because it was on the approved list of independent adjusters in the area. Daugherty told Herman to provide his first report and recommendation to Nautilus within 21 days of May 23, 2007.

Herman acknowledged that he received the assignment on May 24, 2007, and met with Lillibridge to inspect the property on June 1, 2007. Herman asked Lillibridge for his receipts for the SISP panels and for his roof plans because Herman had never dealt with that type of roof before and was not familiar with SISP panels. Lillibridge could not find his receipts from the SISP purchase, but recalled that it had cost him between approximately $4 and $4.50 a square foot. As per standard Nautilus procedure, Herman asked Lillibridge to contact roofing contractors to get an estimate or bid to replace the roof.

Meanwhile, Herman had no contact with a representative at Nautilus from late May until September 19, 2007, nearly four months after receiving his assignment. Daugherty attempted to reach Herman numerous times, but failed to do so. On September 19, 2007, Herman spoke with Daugherty and promised her that he would submit his report and recommendation that day, but Nautilus did not receive the report until September 26, 2007. In his report, Herman recommended that Lillibridge's claim be settled in the amount of $35,000. Herman's recommendation was not based on independent research of the costs of SISP panels or a bid from a roofing contractor. Instead, to reach that figure, Herman used an estimating software called MSB, a tool that insurance adjusters often use in projecting costs. Lillibridge had not been able to secure a bid from a roofing contractor.

Nautilus sent Lillibridge a check for $35,000 and closed its file. Daugherty noted a quote from Herman's report in Lillibridge's case file that Nautilus would "go ahead and pay this and put it in insured's hands. If he does not agree, then that will get him to the contractor." Docket 70-5 at 11. After receiving the $35,000 check, Lillibridge contacted Herman to discuss the check and told Herman that the amount was not enough to fix his roof. Herman told Lillibridge to continue attempting to contact a roofing contractor to get an estimate, and then they would submit it to Nautilus for review.

Lillibridge received a bid from H&R Roofing to put a tile roof over the damaged and incomplete SISP roof for $128,000. Lillibridge sent the bid to Herman, but they agreed it was not a good solution. Herman did not send the bid to Nautilus. On December 21, 2007, H&R Roofing sent Lillibridge a new bid of $342,000 to completely replace the SISP roof. Lillibridge claims he gave the bid to Herman. Herman denies receiving the bid. Nautilus did not receive this bid. Lillibridge's policy limit for repair and replacement of the damaged roof is $300,000.

After receiving the second H&R Roofing bid, Lillibridge attempted to call or contact Herman about it from January of 2008 until July of that same year. Because he was frustrated that he could not reach Herman, Lillibridge contacted his insurance agent, Jody Young, in July of 2008 to ask if she had heard anything back from Nautilus on his claim. Young emailed Daugherty on July 10, 2008, to ask about Lillibridge's claim status. Daugherty said she did not know anything about Herman's attempts to contact Nautilus since the $35,000 check was issued, and she did not know about the $342,000 bid that Lillibridge received from H&R Roofing. Daugherty reopened the file, contacted Herman, and asked him to begin investigating Lillibridge's new bid. Another Nautilus claims adjuster, Gary Grabauskas, was assigned to the case soon after Daugherty reopened it because Daugherty was not allowed to approve claims in an amount higher than $50,000.

H&R Roofing's second bid from December of 2007 expired within 30 days of its issuance, so Lillibridge asked H&R Roofing for an updated bid to provide to Nautilus and Herman. The updated bid was for $460,000. H&R Roofing attributed the rise in the bid to the higher cost of materials and expenses they failed to consider in the prior bid. This bid also was for complete removal and replacement of all panels on the entire roof structure, even though not all panels were on the roof or damaged at the time of the loss. Herman contacted H&R Roofing for a breakdown of the particulars within the updated bid. Nautilus was not satisfied with the details of the breakdown.

Because Nautilus thought the estimate from H&R Roofing was incomplete, Herman contacted and received a bid from another roofing contractor, Architectural Roofing & Sheetmetal (ARS). Herman received an oral bid from ARS to work on the Lillibridge roof for $45 per square foot. Based on this bid, Herman prepared a supplemental report and submitted it to Nautilus on November 6, 2008. Herman recommended that Nautilus pay Lillibridge $270,000 to cover his loss. Grabauskas submitted an internal request for authorization to pay an additional $234,898.01 to Lillibridge, and that payment was approved on December 19, 2008. Lillibridge cashed the check when he received it. Lillibridge did not contact Nautilus about his claim again. Lillibridge filed a lawsuit in state court in July of 2009, which was eventually dismissed without prejudice.

On August 13, 2010, Lillibridge filed this cause of action in federal court and alleged that Nautilus engaged in breach of contract and bad faith. Lillibridge seeks compensatory and punitive damages and attorney's fees due to Nautilus's vexatious refusal to pay. Docket 1. On October 15, 2010, Nautilus filed its answer to the complaint and raised a number of defenses. Docket 7. One of its affirmative defenses was that Lillibridge's cause of action was barred by the two-year limitations provision within his Nautilus insurance policy. Docket 7 ¶ 14. Nautilus also filed a third-party complaint in which Nautilus seeks contribution or indemnity from third-party defendant DAC's II if Nautilus is found liable to Lillibridge. Docket 23.

Lillibridge moves the court for permission to present the issue of punitive damages to the jury and to begin discovery on those issues. Docket 62. Lillibridge also moves for partial summary judgment on Nautilus's third affirmative defense in its answer relating to the limitations provision in Lillibridge's insurance contract. Nautilus resists both motions and asks the court for permission to amend its answer to voluntarily remove its third affirmative defense from its answer. Docket 82.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant

7

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows that there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

"Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995) (citation omitted). For resolution of contract terms, summary judgment may be granted if the "documents supporting the Rule 56 motion are undisputed and reveal that there is no question as to intent." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2730.1 at 61 (3d ed. 1998). Construction of a contract is a question of law that may be determined in a motion for summary judgment. *Id.* at 61-63. Thus, when the meaning of the contract is clear, "the construction of certain provisions in an insurance policy that does not require an inquiry into the parties' intentions or the consideration of outside and conflicting evidence properly may be resolved by summary judgment." *Id.* at 90.

## DISCUSSION

**I.      Motion for Partial Summary Judgment or to Amend the Complaint**

Lillibridge alleges that the court should grant summary judgment on Nautilus's two-year statute of limitations affirmative defense, which was pleaded in its answer, because the policy provision is void under South Dakota public policy when the policy provision shortens the statutorily set statute of limitations period. Nautilus claims that summary judgment is not necessary on the contract provision because it has never relied on that defense for substantive motions or

discovery, and the court should allow it to voluntarily amend its complaint to dismiss the affirmative defense.

In his complaint, Lillibridge pleaded two different causes of action: breach of contract and bad faith. Docket 1. The South Dakota Legislature has established a three-year statute of limitations for tort or personal injury claims and a six-year statute of limitations for claims relating to contracts. *See* SDCL 15-2-14(3) (providing a three-year statute of limitations for personal injuries); SDCL 15-2-13(1) (providing a six-year statute of limitations for actions stemming from contractual rights). The language of Lillibridge's insurance policy, however, shortened those windows and provided that no one could bring legal action against Nautilus unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action *is brought within 2 years* after the date on which the direct physical loss or damage occurred.

Docket 70-13 at 17 (emphasis added). Moreover, Nautilus's third affirmative defense in its answer pleaded that "[p]laintiff's claims are barred by the applicable limitations period, as reflected in the language of the commercial property coverage policy purchased by Plaintiff." Docket 7 ¶ 14.

The South Dakota Legislature has stated that parties may not shorten the length of time a party has to bring a cause of action by contractual agreement, and any provision in a contract that does so is void. *See Leuning v. Dornberger*

*Ins., Inc.*, 250 N.W.2d 675, 676 (S.D. 1977) ("The [South Dakota] legislature, since territorial days, has made void any contractual provision which attempts to shorten the time for an action on the contract under SDCL 53-9-6[.]"). SDCL 53-9-6 also provides that "[e]very provision in a contract restricting a party from enforcing his rights under it by usual legal proceedings in ordinary tribunals, or limiting his time to do so, is void." SDCL 53-9-6. *See also Sheehan v. Morris Irrigation*, 410 N.W.2d 569, 570-71 (S.D. 1987) ("We believe the proper rule is that the law should set the limitation periods, not private contracts. . . . A surety can *limit* the *extent* of its liability, but not the *time* for bringing suit.").

Regardless of whether the six-year or three-year statute of limitations applies to Lillibridge's different claims in this case, both statutory limitations periods are longer than the two-year provision contained in the insurance policy. Thus, the two-year provision violates the public policy of South Dakota, as expressed by its legislature, and the provision is void.

Moreover, Nautilus makes no attempt to revive its statute of limitations defense. Instead, it argues that voluntary dismissal via a motion to amend is an effective way to deal with this affirmative defense or that the proper procedural avenue is to strike the defense under Federal Rule of Civil Procedure 14. The court finds that partial summary judgment is appropriate on a defense when there is no genuine dispute in material fact and the contractual provision upon which the defense relies is void under the state's public policy. *See Celotex Corp.*,

477 U.S. at 323-24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"); *see also* Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendments ("The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."). Lillibridge is entitled to partial summary judgment on the two-year limitations affirmative defense.[1] As a result, Nautilus's motion to amend its answer is denied as moot.

Even if the motion to amend was not moot, under the circumstances of this case, the court would deny the motion to amend. After the time period for amending pleadings as a matter of course has passed, Federal Rule of Civil Procedure 15 provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted unless "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."

---

[1] Nautilus did not allege in its answer that Lillibridge's claims were barred by the statutes of limitations under South Dakota law. Instead, Nautilus pleaded the claims were barred "as reflected in the language of the commercial property coverage policy purchased by Plaintiff." Docket 7 ¶ 14. Thus, the court does not have to reach the issue of whether a bad faith claim is a tort or contract claim for purposes of the relevant statute of limitations under South Dakota law.

*Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quotation and citation omitted). The burden of proving prejudice lies with the party opposing the motion. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).

     Nautilus did not file its motion to amend its answer to withdraw a defense until two years after it was first pleaded in the answer and almost a year after the deadline for amendments had passed. The deadline to complete discovery was only a month away. Most importantly, the motion was only filed after Lillibridge moved for partial summary judgment on the issue. Additionally, while Lillibridge did not conduct extensive discovery on this issue, he did conduct some discovery. And Lillibridge expended time and effort to research the viability of the limitations defense and to move for partial summary judgment. Lillibridge needed to be prepared to respond to all the affirmative defenses raised by Nautilus because Nautilus took no action to inform Lillibridge that it was abandoning its affirmative defense prior to Lillibridge filing the partial summary judgment motion. And Lillibridge would be prejudiced if the limitations provision in the contract went to the jury because the jury might improperly consider this against Lillibridge. The court finds that allowing Nautilus to amend its answer at this late date after Lillibridge filed his motion for partial summary judgment constitutes undue prejudice to the nonmoving party. Therefore, the motion to amend the answer is denied.

## II. Present Issue of Punitive Damages

Lillibridge moves the court to allow him to present the issue of punitive damages to the jury and to compel Nautilus to engage in discovery that is relevant to the punitive damages claim. Nautilus alleges that Lillibridge must meet the requirements in SDCL 21-1-4.1, and that he cannot establish by clear and convincing evidence that there is a reasonable basis to conclude that Nautilus or its agents engaged in knowingly willful, wanton, or malicious conduct. Lillibridge argues that he only has to establish malice, and he does not have to meet the heightened requirement of SDCL 21-1-4.1 because it is a procedural statute that is inapplicable in federal court.

South Dakota allows punitive damages against a defendant "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed[.]" SDCL 21-3-2. The plaintiff must show that the defendant acted with "either actual, malice in fact, or presumed, legal malice." *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991). "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." *Id.* (citation omitted). "Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts." *Id.* (citing *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). An inference of presumed malice may be made when the person acts willfully or wantonly and injures another. *Id.*

Nautilus argues that a South Dakota statute, SDCL 21-1-4.1, which discusses the heightened requirement that must be met prior to discovering or presenting evidence of punitive damages, applies in this case. SDCL 21-1-4.1 provides that:

> [i]n any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

SDCL 21-1-4.1.

Although courts in this district have differed on whether SDCL 21-1-4.1 applies in federal court, this court has previously adopted the district court's rationale in *Ammann v. Massey-Ferguson, Ltd.*, 933 F. Supp. 840, 843 (D.S.D. 1996). There the court found that because SDCL 21-1-4.1 was a procedural statute[2] it should not be applied when a federal court sits in diversity because a federal court should apply federal procedural law and substantive state law. *Id.* at 842. The *Ammann* court based its rationale, in part, on the fact that SDCL 21-1-4.1 "leaves unchanged the substantive nature of the availability of punitive damages." *Id.* at 842 (citing *Dahl*, 474 N.W.2d at 902). Finally, the court in

---

[2] The South Dakota Supreme Court concluded that SDCL 21-1-4.1 was a procedural statute when it analyzed the statute for retroactivity purposes. *Dahl*, 474 N.W.2d at 902 ("SDCL 21-1-4.1 only affects the procedures involved in obtaining discovery regarding punitive damages and submitting the claim to the finder of fact. It is a procedural statute.").

15

*Ammann* noted that SDCL 21-1-4.1 conflicts with the Federal Rules of Civil Procedure, which call for broad discovery and do not generally provide comparable discovery barricades. *Id.* at 843 ("In general, full disclosure and discovery are encouraged under the Federal Rules and the discovery barricade (which applies not only to financial information but also to information which might show malice or other bad acts) directly conflicts with Fed. R. Civ. P. 26.").

The court finds that the rationale in *Ammann* applies to this case. Therefore, Lillibridge does not have to meet the heightened burden found in SDCL 21-1-4.1 to begin discovery on the issue of punitive damages, and Lillibridge may proceed with discovery without court order. With regard to Lillibridge's punitive damages evidence, toward the end of Lillibridge's case in chief during trial but before resting, Lillibridge should request a hearing outside of the presence of the jury. The court will then review the evidence to determine whether there is a reasonable basis to believe that there has been willful, wanton, or malicious conduct by Nautilus. If Lillibridge has met this burden, the court will permit Lillibridge to present the financial evidence related to punitive damages to the jury. If the standard has not been met, however, the request will be denied.

## CONCLUSION

The contractual provision in Lillibridge's insurance policy that shortens his time frame to bring a cause of action against Nautilus is void because it violates South Dakota public policy. Therefore, partial summary judgment is granted in

favor of Lillibridge on Nautilus's third affirmative defense in its answer. The court also denies as moot Nautilus's motion to amend its answer to remove this affirmative defense. The court concludes that Lillibridge may conduct discovery on punitive damages, but reserves ruling until trial on whether evidence of the financial aspect of punitive damages can be presented to the jury. Accordingly, it is

ORDERED that Lillibridge's motion for partial summary judgment on Nautilus's third affirmative defense in his answer raising the two-year limitations period contained in the policy (Docket 68) is granted.

IT IS FURTHER ORDERED that Nautilus's motion for leave to amend its answer (Docket 82) is denied as moot.

IT IS FURTHER ORDERED that Lillibridge's motion to present the issue of punitive damages and conduct discovery (Docket 62) is granted in part and reserved in part.

Dated March 7, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE