UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK LILLIBRIDGE, | ) | CIV. 10-4105-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING |
| NAUTILUS INSURANCE COMPANY, | ) | MOTION TO COMPEL |
| | ) | |
| Defendant and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAC's II, INC., d/b/a Dakota Claims | ) | |
| Service of Chamberlain, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Plaintiff, Mark Lillibridge, filed a complaint against defendant and third-party plaintiff, Nautilus Insurance Company, related to property insurance coverage for damage to his home following a hail storm. Lillibridge moves to compel Nautilus to produce specific discovery requested in his interrogatories and requests for production. Docket 85. Nautilus resists the motion to compel and alleges that the majority of the requests for production or interrogatories are not relevant, are overly broad and burdensome, or call for the disclosure of confidential or privileged information. Docket 105. For the following reasons, Lillibridge's motion to compel is granted.

**BACKGROUND**

Lillibridge owns a house in Burke, South Dakota. Since 2003 or earlier, Lillibridge has been in the process of remodeling or adding on to his home, including replacing the roof of the entire structure. Prior to beginning

construction on the house, Lillibridge purchased a builder's risk policy from Nautilus that provided commercial property coverage. Nautilus is an insurance company organized under the laws of the state of Arizona and authorized to do business in South Dakota.

On April 21, 2007, a severe hail storm struck the city of Burke. At the time of the storm, Lillibridge's roof was only partially completed with some of the roofing panels installed on the roof and others laying adjacent to the property. Both installed and loose roofing panels sustained damage from the storm. On May 23, 2007, Lillibridge notified Nautilus that he had sustained a loss and wanted to invoke coverage under his policy. That same day, Nautilus claims examiner Cara Daugherty sent the claim assignment form to independent claims adjuster Clinton Herman of Dakota Claims Service of Chamberlain. Herman acknowledged that he received the assignment on May 24, 2007, and met with Lillibridge to inspect the property on June 1, 2007. As per standard Nautilus procedure, Herman asked Lillibridge to contact roofing contractors to get a bid to replace the roof.

Meanwhile, Herman had no contact with a representative at Nautilus from late May until September 19, 2007, nearly four months after receiving his assignment. Once Herman completed and submitted his report, he recommended that Lillibridge's claim be settled in the amount of $35,000. Herman's recommendation was not based on independent research of the costs of the roofing panels or a bid from a roofing contractor. Instead, to reach that figure Herman used an estimating software called MSB, a tool that insurance adjusters often use in projecting costs. Nautilus sent Lillibridge a check for $35,000 and closed its file. Daugherty noted a quote from Herman's report in

Lillibridge's case file that Nautilus would "go ahead and pay this and put it in insured's hands. If he does not agree, then that will get him to the contractor." Docket 70-5 at 11.

After receiving the $35,000 check, Lillibridge contacted Herman to discuss the check and told Herman that the amount was not enough to fix his roof. Herman told Lillibridge to continue attempting to contact a roofing contractor to get an estimate, and then they would submit it to Nautilus for review. Lillibridge then received a bid from H&R Roofing to put a tile roof over the damaged and incomplete roof for $128,000. Lillibridge sent the bid to Herman, but they agreed it was not a good solution. Herman did not send the bid to Nautilus. In December of 2007, H&R Roofing sent Lillibridge a new bid of $342,000 to completely replace the damaged roof. Lillibridge claims he gave the bid to Herman. Herman denies receiving the bid. Nautilus did not receive this bid. Lillibridge's policy limit for repair and replacement of the damaged roof is $300,000.

After receiving the second H&R Roofing bid, Lillibridge attempted to call or contact Herman about it from January of 2008 until July of that same year. Because he was frustrated that he could not reach Herman, Lillibridge contacted his insurance agent, Jody Young, in July of 2008 to ask if she had heard anything back from Nautilus on his claim. Young emailed Daugherty on July 10, 2008, to ask about Lillibridge's claim. Daugherty said she did not know anything about Herman's attempts to contact Nautilus since issuing the $35,000 check, and she did not know about the $342,000 bid that Lillibridge received from H&R Roofing. Daugherty reopened the file, contacted Herman, and asked him to begin investigating Lillibridge's new bid. Another Nautilus claims

adjuster, Gary Grabauskas, was assigned to the case soon after Daugherty reopened it because Daugherty was not allowed to approve claims in an amount higher than $50,000.

H&R Roofing's second bid from December of 2007 expired within 30 days of its issuance, so Lillibridge asked H&R Roofing for an updated bid to provide to Nautilus and Herman. The updated bid was for $460,000. H&R Roofing attributed the rise in the bid to the higher cost of materials and expenses they failed to consider in the prior bid. This bid also was for complete removal and replacement of all panels on the entire roof structure, even though not all panels were on the roof or damaged at the time of the loss. Herman contacted H&R Roofing for a breakdown of the particulars within the updated bid. Nautilus was not satisfied with the details of the breakdown.

Because Nautilus thought the estimate from H&R Roofing was incomplete, Herman contacted and received a bid from another roofing contractor, Architectural Roofing & Sheetmetal (ARS). Herman received an oral bid from ARS to work on the Lillibridge roof for $45 per square foot. Based on this bid, Herman prepared a supplemental report and submitted it to Nautilus on November 6, 2008. Herman recommended that Nautilus pay Lillibridge $270,000 to cover his loss. Grabauskas submitted an internal request for authorization to pay an additional $234,898.01 to Lillibridge, and that payment was approved on December 19, 2008. Lillibridge cashed the check when he received it. Lillibridge did not contact Nautilus about his claim again. Lillibridge filed a lawsuit in state court in July of 2009, which was eventually dismissed without prejudice.

On August 13, 2010, Lillibridge filed this cause of action in federal court and alleged that Nautilus engaged in a breach of contract and bad faith. Lillibridge also seeks compensatory and punitive damages and attorney's fees due to Nautilus's vexatious refusal to pay. Docket 1. On October 17, 2011, Lillibridge submitted his initial interrogatories and request for production of documents. On November 3, 2011, Lillibridge and Nautilus stipulated to a protection order related to DAC's business documents, and the court approved that protective order soon after. On December 6, 2011, Nautilus responded to Lillibridge's initial discovery requests. Lillibridge claims that the responses were incomplete and included only boilerplate objections. Nautilus did not provide a privilege log substantiating any privilege assertions, even though Nautilus raised privilege in many of its responses or objections.

On December 30, 2011, Lillibridge submitted his second request for production of documents. Nautilus responded on April 24, 2012. Lillibridge again alleged that the responses were incomplete, included boilerplate objections, and did not include a privilege log. Lillibridge submitted his third request for production of documents on January 6, 2012, and Nautilus responded on April 24, 2012. Nautilus later supplemented a number of its responses, but Lillibridge asserts that it has not provided many documents that are responsive to Lillibridge's requests. Lillibridge asserts that he made efforts to meet and confer to resolve these discovery disputes as required by the local and civil rules. The parties could not reach a resolution.

As a result, on October 19, 2012, Lillibridge moved to compel Nautilus to respond to a number of its requests for production or interrogatories relating to discovery. Docket 85. Following Lillibridge's motion to compel, Nautilus

produced some of the documents that were requested and objected to the remaining interrogatories and requests for production on other grounds. The court will take up the remaining portions of the motion to compel.

## STANDARD OF REVIEW

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, which provides:

> Unless otherwise limited by a court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). The court will limit the extent of discovery if it determines the discovery is unreasonably duplicative, cumulative, can be obtained from a more convenient source, or if the expense or burden of discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(C).

The scope of discovery under Rule 26(b) is extremely broad. *See* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller § 2007 at 39 (quoting *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947)). The federal rules distinguish between discoverability and admissibility of evidence.

Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) offers guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. . . . In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. . . . When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

Fed. R. Civ. P. 26 advisory committee's note to 2000 Amendments, subdivision b.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. *Id.* "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y,* Civ. No. 03-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Id.* (citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.,* 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. *Penford Corp. v. Nat'l Union Fire Ins. Co.,* 265 F.R.D. 430, 433 (N.D. Iowa 2009); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.,*

198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had. *Cincinnati Ins. Co. v. Fine Home Managers, Inc.,* Civ. No. 09-234, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010); *see also Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

**DISCUSSION**

## I.    Evidence of Prior Litigation

Lillibridge made a number of requests for production or interrogatories that relate to prior litigation in which Nautilus was a party. Lillibridge alleges that documents pertaining to Nautilus's prior litigation are relevant to this case and could lead to admissible evidence. Nautilus objected to these discovery requests and stated that they were not relevant, were too broad and unduly burdensome, and expensive. Additionally, Nautilus argues that if the court determines that discovery from prior litigation should be produced, it should be limited to first-party, weather-related, property damage, bad faith lawsuits filed against Nautilus in South Dakota. The first request at issue is:

> **Interrogatory 5** (First Set): Have you ever been a party in a civil lawsuit alleging insurance bad faith or unfair claims processing? If so, identify the case by name, court, and trial docket number, and indicate the substance of the allegations and the outcome of the case.

For discovery of out-of-state claims or documents to be relevant in this case "these cases must share some factual or legal vector with [plaintiff's] claims." *Kirschenman v. Auto-Owners Ins.,* 280 F.R.D. 474, 489 (D.S.D. 2012).

This is a case where Lillibridge alleges that Nautilus engaged in breach of contract, bad faith, vexatious refusal to pay, and also made a request for punitive damages. For a bad faith claim in South Dakota, the question "is whether the insurer's investigation or decision to deny a claim was unreasonable and was made in knowing or reckless disregard of the facts at the time the insurer made its decision to litigate rather than to settle." *Dakota, Minnesota & Eastern R.R. Corp. v. Acuity*, 771 N.W.2d 623, 632 (S.D. 2009). To receive punitive damages Lillibridge must establish that Nautilus acted with actual or presumed malice. *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 698-99 (S.D. 2011) (citing SDCL 21-3-2).

Among the factors that a court considers when it is determining the appropriate amount of punitive damages, if any, is the degree of reprehensibility of the defendant's conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 666 (S.D. 2003). To make this determination the court considers whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, deceit, or mere accident." *Roth*, 667 N.W.2d at 666.

Nautilus argues that if the court orders it to respond to interrogatory 5, the order should be restricted to first-party bad faith, weather-related, property

claims from South Dakota. The court does not agree. First, courts in this district

have routinely allowed discovery of prior litigation related to insurance bad

faith.[1] Second, Lillibridge is seeking to establish that Nautilus engages in a

pattern of conduct that could amount to bad faith or lead to admissible evidence

related to his claims. While evidence of first-party bad faith, weather-related,

property damage claims may be *more* relevant or factually analogous to

Lillibridge's claim, it does not lead to the conclusion that other bad faith claims

are *not relevant* to this case. Lillibridge is not necessarily limited to admitting

evidence of identical prior claims involving the loss of a roof due to a hail storm

in South Dakota to show the nexus between the requested discovery and his

claim. Instead, prior bad faith litigation may be relevant to show Nautilus's

knowledge and conduct and whether a pattern and practice of inadequate

investigation, offering unreasonably low settlement offers, or other reprehensible

conduct is being repeated among policyholders.

    The burden now shifts to Nautilus to show that this interrogatory is overly

broad, burdensome, or oppressive. Nautilus cannot carry this burden because it

---

[1] *Lyon v. Bankers Life & Cas. Co.*, Civ. No. 09-5070, 2011 WL 124629, at *13 (D.S.D. Jan. 14, 2011) ("Judges of this district court have in numerous cases overruled objections to similar requests and required discovery of documents from other litigation."); *Beyer v. Medico Ins. Grp.*, 266 F.R.D. 333, 338 (D.S.D. 2009) ("Production is to include litigation documents, including but not limited to complaints, motions, court orders, and the like."); *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 326 (D.S.D. 2009) ("Because the documents Brown Bear requests may reveal that Cuna's alleged conduct in this case occurs frequently and as a result risks harm to many, the requested documents may be relevant to demonstrate reprehensibility, which is a proper consideration in a punitive damages determination.").

has done nothing more than state broad, boilerplate, or cursory objections. *See*
*Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-
85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must
respond thereto. Unless the task of producing or answering is unusual, undue
or extraordinary, the general rule requires the entity answering or producing the
documents to bear that burden."). Nautilus failed to articulate how this
discovery is extraordinary or unusual. Nautilus does not allege that it cannot
comply with this request, only that Lillibridge cannot establish that he is
entitled to the discovery outside of South Dakota, in particular, when it is an
insurer that underwrites insurance in 49 states and has been in business for
over 25 years. That is not enough to show an undue burden. *See Kirschenman*,
280 F.R.D. at 491 (noting that while the insurance company claims that it has
4500 files that are not currently sorted electronically, defendant did "not assert
that *they cannot be sorted*.").

Accordingly, Nautilus is ordered to provide the case name, court, docket
number, the substance of the allegations, and outcome of bad faith cases
brought against it. The court finds that this is relevant and not unduly
burdensome for Nautilus to produce. Because there is no date restriction within
the interrogatory itself, the court will limit the response to interrogatory 5 as to
those documents that are responsive to this request from January 1, 2001, to
the present.

**Request for Production Number 14** (Second Set): Any documents relating to litigation against Defendant involving denial in part or whole of property claims from January 1, 2001 to present.

**Request for Production Number 4** (Third Set): Any Documents relating to litigation from January 1, 2001, to the present, involving Nautilus' policies or procedures for calculating or handling depreciation on property damage claims.

Lillibridge has brought a breach of contract claim related to his property insurance with Nautilus. To establish a breach of contract claim, a plaintiff must show that there was (1) an enforceable promise; (2) breach of that promise; and (3) damages as a result of the breach. *Bertelsen*, 796 N.W.2d at 694. Both requests for production numbers 14 and 4, unlike interrogatory 5, do not specifically state that they are related to bad faith claims. The court will assume that these requests relate to bad faith claims and are more tailored to discuss property claims and valuation within prior property insurance litigation as it pertains to bad faith and breach of contract. To that extent, this information is relevant and discoverable for the same reasons discussed for interrogatory 5.

The court does not find, however, that Nautilus must produce "any document" pertaining to these prior bad faith, property damage claims, but instead must first produce a copy of the complaint and answer, including amended complaints and answers and if a dispositive motion was filed in these cases, then Nautilus shall produce a copy of each of the briefs filed in support of the dispositive motion. After Lillibridge views these initial pleadings, he may identify and request additional files he wishes to have access to if he can

establish that they are relevant and there is a sufficient factual or legal nexus to his claim.

>    **Request for Production Number 1** (Third Set): Any Documents relating to litigation from January 1, 2001, to the present, involving the defense that a breach of contract claim is barred by the applicable limitations period as reflected in the language of the commercial property coverage policy, including but not limited to motions, supporting affidavits, briefs and court opinions.

Nautilus asserts that no such lawsuits have occurred in South Dakota, that the discovery is unduly burdensome, and that this issue is not relevant because Nautilus moved to withdraw its defense based on the statute of limitations provision contained in Lillibridge's policy. Lillibridge's policy did contain a shorter limitations period for Lillibridge to bring suit against Nautilus than is provided by South Dakota state law, and Nautilus asserted a defense based on this provision in the policy in its answer. Although Nautilus attempted to withdraw that defense, the court granted summary judgment in favor of Lillibridge on this issue. Docket 118 at 11-12.

Again the language of this request does not specify that it pertains to bad faith actions, but the court will assume that this request relates to prior litigation involving application of a limitations period in a bad faith or breach of contract claim. Accordingly, the court finds that this information is relevant based on the rationale discussed regarding interrogatory five and because this request is narrowly tailored to the factual or legal issues that exist in this case. *See Brown Bear*, 266 F.R.D. at 325 (noting that evidence of prior litigation for

claims of bad faith involving the policy's time filing provisions would be relevant to determine reprehensibility and punitive damages); *Lyon*, 2011 WL 124629, at *14 ("If the language of these policies has been litigated, the decisions of other courts would be relevant to the issues before this court concerning defendant's knowledge and conduct, regardless of the jurisdiction in which the court opinion was issued."). Nautilus has not established that compliance with the request would cause an undue burden or that the discovery is not relevant.

The court finds, however, that Nautilus does not have to produce "any document" related to the prior litigation, but should provide Lillibridge with complaints, answers, motions, supporting affidavits, briefs, and court opinions from outside of South Dakota that are responsive to this request.

Finally, Nautilus objects to requests for production numbers 1, 4, and 14 based on attorney-client privilege or that the documents contain confidential information. At this point in the litigation, the type of information that is requested is case numbers, names, motions, and other innocuous information that is within the public's access. The court does not see how the requested information could be work product or otherwise involve attorney-client information. Documents filed in other litigation, unless otherwise subject to a protective order under Rule 26(c), are not protected by either the attorney-client/work product privilege or proprietary privilege as those documents are filed as part of a court's record. Moreover, Nautilus is required to prepare a privilege log if it claims that a privilege is asserted. Fed. R. Civ. P. 26(b)(5)(A).

Nautilus did not do so. For all these reasons, Nautilus's motion to compel is granted as to interrogatory 5 and requests for production numbers 1, 4, and 14 as explained above.

## II.    Prior Testimony of Nautilus Employees

Lillibridge seeks an order compelling Nautilus to produce copies of prior deposition transcripts for certain of its employees. The specific request provides:

> **Request for Production Number 9** (First Set): Copies of any deposition transcripts of depositions of Cara Daugherty, Gary Grabauskas, Kellie Barwick, Ray Alvarez, and Kim Levensky.

Nautilus initially objected and stated that this evidence is not relevant and is not limited to timing or scope so it is overly broad, unduly burdensome, and expensive. Following Lillibridge's motion to compel, Nautilus stated that only three of these employees have actually given testimony or depositions in prior cases. Nautilus asserts that Barwick was only deposed once before and does not have a copy of that transcript, and thus, Nautilus is unable to produce that transcript. Alvarez has been deposed twice, but one of those depositions was taken before employment at Nautilus; thus, Nautilus does not have access to that transcript. Alvarez's other testimony was given in an arson case, so Nautilus claims that is not relevant to this case. Finally, Levensky has been deposed five or six times, but each related to a third-party claim; therefore, they are not relevant to this first-party claim.

The court has already found that prior litigation against Nautilus related to bad faith is relevant for discovery purposes regardless of geography, party, or

type of claim. Similarly, this court finds that employee deposition testimony relating to prior bad faith litigation against Nautilus is relevant for those same reasons. If Nautilus has access to prior depositions of the employees listed above that occurred while those employees were working at Nautilus in any capacity, it should provide a copy of these depositions to Lillibridge. This includes contacting counsel who represented Nautilus in prior actions, its own in-house counsel, and its officers and employees, to obtain copies of these transcripts. *See Kirschenman*, 280 F.R.D. at 490 ("[The insurer] shall also obtain copies of any transcripts of deposition or trial testimony of its employees or officers in any of the litigation files requested by plaintiffs."). Because this testimony is relevant to this case and could lead to admissible evidence, the motion to compel is granted as to request for production number 9.

## III.   Personnel Files

Lillibridge asked for the production of personnel files of the Nautilus employees who handled his claim, specifically his request provides:

> **Request for Production Number 10** (First Set): The personnel files of Cara Daugherty, Gary Grabauskas, Kellie Barwick, Ray Alvarez and Kim Levensky, including evaluations performed by supervisors, evidence of bonuses received and evidence of awards given.

Nautilus objected to this request and stated that it is not relevant and because it is not limited in timing or scope it is overly broad, unduly burdensome, and expensive. Nautilus also objected on the grounds that the personnel files contain confidential, privileged, or proprietary information that is

17

unrelated to this litigation. Nautilus did not produce a privilege log. Later, following Lillibridge's motion to compel, Nautilus agreed to provide the requested personnel files if the parties entered into a new confidentiality agreement.

First, courts in the District of South Dakota have routinely found personnel files in insurance bad faith cases to be relevant and discoverable. *See Lyon*, 2011 WL 124629, at *8 ("[T]he district court in the Western Division of the District of South Dakota has traditionally and uniformly allowed discovery of personnel files in insurance bad faith cases."). Moreover, Nautilus has agreed to produce the entire personnel files of these employees subject to the entry of a new confidentiality agreement. While the court granted a protection order earlier in this case, it does not appear that Nautilus's personnel files would be covered under the existing protection order, which only specified protecting business records or documents belonging to the third-party defendant.[2] The parties will execute a new protection order that encompasses Nautilus's business records.

Thus, this request for production is granted subject to the following limitations: first, Lillibridge must sign a protection order pertaining to personnel files of Nautilus and other confidential documents discussed in this order, and second, the production is limited to the five employees listed above, any evaluation of these employees by their supervisors, and any other Nautilus

_____

[2] *See* Docket 49 (noting that the protection order pertains to "financial and corporate documents disclosed by Defendant DACS, II, Inc. and/or its principals Jason Good and Clinton Herman, and/or any office of Dakota Claims, that are designated and stamped "CONFIDENTIAL.").

employee who worked on Lillibridge's claim. Finally, Nautilus stated that it will produce the personnel files from 2003-2009, but the court finds that each employee's personnel file from January 1, 2001, to the present is relevant to this claim and should be produced.

## IV.    Claims Manuals, Audit Procedures, and Quality Assurance Material

In relation to Lillibridge's requests for claims manuals, audit procedures, and quality assurance manuals, Lillibridge specifically requested the following:

> **Request for Production Number 12** (First Set): All claims manuals, training materials, seminar materials, memoranda, directives, letters, and other forms of written communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of Defendant in the handling of claims, that refer or relate in any way to the handling of claims generally or to the handling of property damage claims for the last seven (7) years, including without limitation:

> (a)    The documents reflecting Defendant's claims adjusting and settlement policies as they existed at all times Plaintiff's claim was open; and

> (b)    The documents reflecting any subsequent changes of policy.

> **Request for Production Number 15** (First Set): A copy of any quality assurance manuals and audit procedures that apply to property damage claims.

As to request for production number 12, Nautilus did not object but stated that it trains its claims representatives based on the company's best practices and that it typically does not hire claims representatives who are unfamiliar with the processing and paying of claims. Nautilus then produced a

copy of its Best Practice Guidelines. Nautilus states that it does not maintain an old version of its Best Practice Guidelines once a new version is released.

Nautilus objected to request for production number 15 because it stated that these documents contain confidential, privileged, or proprietary information. Nautilus did not provide a privilege log. Nautilus also produced a copy of its Quality Control and Quality Review Guidelines, and quality review audits for claims examiners Daugherty and Grabauskas from 2007 to the present. Nautilus also stated that it conducted a thorough review of its files and does not have any other material responsive to these requests. Lillibridge argues that Nautilus must have more documents that are responsive to this request.

The court finds that if Nautilus has more discovery that could be responsive to this request, it should disclose this information because courts in this district have found that the production of claims manuals "could lead to relevant information and provides context for the information relating to how [insurance] claims are handled." *Hurley v. State Farm Mut. Auto. Ins. Co.*, Civ. 10-4165, 2012 WL 1600796, at *5 (D.S.D. May 7, 2012). Courts have also "traditionally required disclosure of quality assurance audits in insurance bad faith cases." *Lyon*, 2011 WL 124629, at *9 (citing *McElgunn v. Cuna Mut. Grp.*, Civ. No. 08-5080, Docket 84 at 3 (D.S.D. 2007); *Beyer*, 2009 WL 736759, at *2).

Thus, claims manuals, quality assurance manuals, and audit procedures all could potentially lead to the discovery of admissible evidence in Lillibridge's bad faith case as to whether Nautilus properly handled or evaluated his claim.

Although Nautilus has provided some documents in this area, Nautilus shall immediately make reasonable and thorough efforts to identify documents either in paper or electronic form that are responsive to Lillibridge's request and to supplement its response if additional documents become known to it at a later date. If Nautilus has older or newer versions of the documents that Nautilus has already provided to Lillibridge, then it should provide those to Lillibridge. Nautilus should also provide any documents that Nautilus's claims examiners rely upon in their day-to-day operations that relate to the granting or denial of claims.

Many of Nautilus's concerns about the production of confidential or proprietary information through these requests should be alleviated by the entry of a new protection order, which has already been ordered by this court. Any other claim by Nautilus of privilege cannot be properly addressed because Nautilus failed to provide a privilege log. Thus, the court orders that Nautilus respond fully and completely to Lillibridge's requests for production numbers 12 and 15.

## V.     Bonus, Compensation, and Incentives for Employees

Lillibridge made a number of requests that inquired as to how Nautilus employees received monetary compensation. His specific requests are as follows:

> **Request for Production Number 18** (First Set): All documents concerning bonuses, stock compensation or any other remuneration except salary, given to any claim representative in 2007 and 2008 who handled Mark Lillibridge's claim.

Nautilus objects to this request and claims that it is not relevant, that it is overly broad and unduly burdensome, and that it calls for the production of documents containing confidential, privileged, or proprietary information. The court finds that this information is relevant because monetary incentives could establish company and employee motives for how Nautilus investigates or handles claims with its policyholders and could lead to other facts that could bear upon a punitive damages or bad faith determination. *See Lyon*, 2011 WL 124629, at *10 ("Bonus programs may provide some evidence of the motivation of claims personnel in evaluating a . . . claim. Qualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a claim, is certainly relevant to a bad faith claim.").

Nautilus has not shown how production would be unduly burdensome, and the court finds that this request is narrowly tailored enough that it is not overly broad. Any confidential or proprietary documents can be protected through the entry of the parties' new protection order, which previously was mandated in this order. Finally, Nautilus's assertion of privilege is not warranted absent a privilege log. The motion to compel request for production number 18 is granted.

> **Request for Production Number 9** (Second Set): Any and all documents in use since January 1, 2004, which inform Defendant's property claim personnel of the manner in which they can expect to get increases in salary, bonuses or commissions, including but not limited to human resources manuals, salary administration manuals, personnel bulletins or manuals, orientation booklets, directives or memos.

**Request for Production Number 10** (Second Set): Any and all documents relating to performance goals and how they relate to claims examiner and manager bonuses from January 1, 2004, to present.

**Request for Production Number 11** (Second Set): Any and all documents which relate to incentives given to claims examiners or managers in return for reducing the amount of claims payments, reducing combined ratio, reducing claim severity and reducing claims payouts from January 1, 2004, to present.

**Request for Production Number 12** (Second Set): Any and all documents which relate to incentives given to claims examiners or managers in return for overall reductions in office, department, branch or company loss ratios, claim severity, average claim payments, or reduction in claim payments of any kind from January 1, 2004, to present.

Nautilus did not object to requests for production numbers 9-12, but instead provided information responsive to the requests or otherwise asserted that it does not keep that type of information. At this point in the litigation, Nautilus has provided the Nautilus Insurance Compensation Guidelines in effect for claims examiners in 2007, 2008, and 2009. It has also provided copies of the annual email that announces the payment of bonuses to Nautilus employees from 2008, 2009, and 2010. Nautilus has also stated that it does not save the annual email from year to year and it only has years 2008-2010 in its possession.[3] Additionally, Nautilus stated that it does not tie employee compensation to the payment, denial, discounting, opening, or closing of any

---

[3] Lillibridge argues that Nautilus has engaged in spoliation of evidence with the destruction of prior years' employee emails that announce the payment of bonuses. The court declines to address this allegation at this stage of the litigation. Lillibridge is free to raise the issue later.

claims. Finally, Nautilus provided the individual goal sheets for Daugherty and Levensky, but not for any other employee.

Lillibridge claims that Nautilus has provided seven pages worth of documents in this area, and of those documents, many have multiple redactions within them. Lillibridge argues that there must be more documents responsive to these requests. Nautilus claims that it has been completely responsive and no more documents exist that respond to these requests for production.

First, the court has already stated that employee incentive information, if it exists, is relevant and discoverable regarding bad faith claims. Lillibridge argues that it did not receive the Nautilus Insurance Compensation Guidelines in effect in 2007. If Nautilus has a copy of this document, it should provide it to Lillibridge. If Nautilus has any other goal sheets for the personnel who handled Lillibridge's claim, then those documents should be provided pursuant to this request, as well as to the prior request for personnel files. Additionally, Nautilus must again provide the seven pages it previously provided subject to these requests without redactions. Nautilus failed to produce a privilege log or identify any other reason justifying redaction of the information contained within these documents. Finally, if Nautilus has or becomes aware of any further documentation from January 1, 2004, to the present that discusses bonuses, compensation, or incentive programs, then it should produce those documents to Lillibridge. The motion to compel is granted as to requests for production numbers 18 and 9-12.

## VI.    Loss Ratios, Cost Containment, or Decreasing Claim Costs

Lillibridge requested that Nautilus provide documentation that related to loss ratios, cost containment, or decreasing claim costs. Those specific requests are as follows:

> **Request for Production Number 2** (Second Set): Any and all documents referring to goals, targets, or objectives established for claim payments, loss ratios or combined ratios applicable to property claims from January 1, 2004, to present.

> **Request for Production Number 13** (Second Set): Any and all documents relating to efforts or goals to decrease loss rations [sic] or decrease claim severity costs from January 1, 2004, to present.

Nautilus did not object to these requests, but responded that the only documents that were responsive to the requests were goal sheets for Daugherty and Levensky for the years 2007, 2008, and 2009. Lillibridge claims that it did not receive Daugherty's goal sheet for 2007. The court finds that Nautilus should provide Daugherty's goal sheet for 2007 and goal sheets that relate to any other Nautilus employee involved in Lillibridge's claim for the same reasons that the court found that the bonus, compensation, and incentives for employees are relevant to this case. The court also finds that Nautilus should produce any documents that it discovers now or in the future in its possession that relate to cost-containment measures and other profit-maximization programs. Lillibridge's motion to compel as to requests number 2 and 13 is granted.

## VII.  Regulatory Information

Lillibridge made a number of discovery requests that relate to Nautilus's involvement with the regulatory sector. Those requests are as follows:

> **Request for Production Number 16** (First Set): Copies of any Department of Insurance consumer complaints involving Nautilus Insurance Company for the last seven (7) years.

> **Request for Production Number 15** (Second Set): Any and all documents relating to complaints made to state regulators involving Defendant's handling of property claims from January 1, 2001, to present.

In response to this request, Nautilus objects as to relevancy, that the request is overly broad, unduly burdensome and expensive, and as containing confidential, privileged, and/or proprietary information unrelated to the litigation. Not waiving the objection, Nautilus represented to the court that it only had one consumer complaint submitted to the South Dakota Division of Insurance, which it produced to Lillibridge. Nautilus objects to having to produce complaints from outside of South Dakota.

The court addresses relevancy first. The court has already determined that prior litigation involving both bad faith and property-related claims from other jurisdictions is relevant to this case. That analysis is equally true for regulatory complaints and most regulatory conduct that deals with bad faith. As previously discussed, a consideration for a punitive damages claim is whether the insurance company repeated its misdeeds as a part of a larger pattern or whether its conduct in the plaintiff's case was a mere mistake. *Roth*, 667 N.W.2d

at 666 (citing *Campbell,* 538 U.S. at 419). Thus, the fact that there may have been other regulatory complaints in other states against Nautilus that are factually or legally similar to Lillibridge's claim is relevant, and documents related to these regulatory complaints are also discoverable. *See Beyer*, 266 F.R.D. at 339 ("The court finds that the requested documents [related to regulatory complaints] are relevant, in that the documents may reveal evidence that Medico used or uses false bases to deny claims, and that evidence should not be limited to South Dakota claims only.").

The court now turns to Nautilus's assertion that the discovery is unduly burdensome. Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery that is otherwise appropriate.[4] Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable. *See United States v. Nysco Labs., Inc.,* 26 F.R.D. 159, 161-62

---

[4] *See In re Folding Carton Antitrust Litig.,* 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate.' "); *Alexander v. Parsons,* 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence."); *Burns,* 164 F.R.D. at 593 (determining that "the fact that answering the interrogatories will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing 'huge volumes of documents and information' is an insufficient basis to object.").

(E.D.N.Y.1960); *Rogers v. Tri-State Materials Corp.,* 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Nautilus failed to establish that these requests are unduly burdensome. Nautilus does not allege that it cannot comply with this request, only that Lillibridge cannot establish that he is entitled to the discovery outside of South Dakota, in particular, when it is an insurer that underwrites insurance in 49 states and has been in business for over 25 years. That is not enough to show an undue burden. *See Kirschenman*, 280 F.R.D. at 491 (noting that the insurance company claims that it has 4500 files that are not currently sorted electronically but defendant did "not assert that *they cannot be sorted.*"). Any confidential or proprietary documents can be protected through the entrance of the parties' new protection order previously mandated in this order. Finally, Nautilus's assertion of privilege is not warranted absent a privilege log. Lillibridge's motion to compel as to requests for production numbers 16 (first set) and 15 is granted.

> **Request for Production Number 16** (Second Set): Any and all documents relating to regulatory actions, including but not limited to suspension or revocation proceedings, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Reports of Examinations, Corrective Orders or Corrective Action Plans relating to Defendant's property claims from January 1, 2001, to present.

This request is similar to requests for production numbers 16 (first set) and 15 (second set) except it focuses more on the consequences of the regulatory complaints filed against Nautilus. This request is relevant and discoverable. Further, evidence relating to prior regulatory action would be in Nautilus's possession, would focus on Nautilus's conduct in particular, and would be part of its institutional knowledge related to its own policies. *See Lyon*, 2011 WL 124629, at *25 (granting a nearly identical request for production). Thus, if Nautilus has documents responsive to this request it must provide those to Lillibridge. Nautilus's assertion of privilege is not warranted absent a privilege log. Accordingly, Lillibridge's motion to compel as to request number 16 (second set) is granted.

> **Request for Production Number 17** (Second Set): Copies of any and all annual or periodic reports provided to state insurance regulators containing information pertaining to the number of property claims or denials associated with Defendant's property policies from January 1, 201, [sic] to present. This request is not limited to South Dakota.

Nautilus argues that this request is not relevant, is overly broad and unduly burdensome, and that the language of the request is vague and ambiguous. The court finds that this regulatory information is equally as relevant as the other regulatory discovery previously discussed. Nautilus has failed to show how production of this information is unduly burdensome other than through a cursory objection. If Nautilus has any annual or periodic reports that it provided to state insurance regulators about property claims, then it

must provide those documents to Lillibridge. Lillibridge's motion to compel as to request for production number 17 is granted.

> **Request for Production Number 6** (Third Set): Any regulatory bulletins or decisions regarding or referring to calculation or handling of depreciation on property damage claims.

Nautilus argues that this request is not relevant, is overly broad and unduly burdensome, and expensive. Nautilus later asserted that if the documents responsive to this request have not previously been disclosed, then they do not exist or copies were not retained. The court finds that request for production number 6 (third set) is relevant because the value of Lillibridge's claim and any depreciation since his date of loss is at issue in this case, so Nautilus's prior position on or knowledge about these topics will be relevant to this claim or may lead to admissible evidence. Nautilus did not adequately express how this request is unduly burdensome. If Nautilus has now or later finds documents in its possession that are responsive to this request it should provide those to Lillibridge. Therefore, Lillibridge's motion to compel related to request for production number 6 is granted.

## VIII.  Attorney's Fees

Lillibridge seeks reasonable attorney's fees for bringing his motion to compel. Attorney's fees are available if a motion to compel is granted or granted in part and denied in part. *See generally* Fed. R. Civ. P. 37 (providing the scheme for sanctions on a motion to compel). "But the court must not order [a] payment if . . . the opposing party's nondisclosure, response, or objection was

substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). Here the court finds that because most of Nautilus's responses, objections, and nondisclosure were either boilerplate or not substantially justified, fees are appropriate.

Due to Lillibridge's success on the merits here, he is entitled to reasonable attorney's fees and costs for bringing this motion to compel. Lillibridge will file an affidavit setting out the time reasonably spent on the motion, the hourly rate requested for fees, and costs, and any other factual matters relevant to the motion for attorney's fees within 21 days of this order. Then Nautilus will have 21 days to file any objections to the allowance of fees and costs. Nautilus may challenge any of the factual matters that bear on the award of attorney's fees.

## CONCLUSION

The court grants Lillibridge's motion to compel and directs Nautilus to answer the interrogatory at issue and to turn over the discovery requested in the requests for production because it is relevant and could lead to the discovery of admissible evidence. Because Lillibridge has succeeded on his motion, he is entitled to attorney's fees and costs. Accordingly, it is

ORDERED that Lillibridge's motion to compel (Docket 85) is granted. Nautilus Insurance Company will fully answer the interrogatories and requests for production of documents described above by **June 3, 2013**.

IT IS FURTHER ORDERED that because Lillibridge is entitled to his reasonable attorney's fees and expenses for filing this motion, he will file an

affidavit setting forth his requested fees and costs within 21 days of the entry of this order.

Dated May 3, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE